In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-00-00163-CV


______________________________








IN THE INTEREST OF


T.J.K., A CHILD






 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 99-0629




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Sam Kersey appeals from the trial court's denial of his motion to modify in a suit
affecting the parent-child relationship, raising two points of error. He first contends the trial
court erred in finding that he waived any objection to the constitutionality of a statute
permitting grandparent access. Second, he contends the trial court erred in finding that
his reliance on the United States Supreme Court holding in Troxel v. Granville did not
establish sufficient grounds to modify the previous order. 

 Sam, the father of T.J.K., a female child born in 1991, Connie Kunaknana, the
maternal grandmother of the child, and Lila Kersey, the mother of the child, all agreed to
the December 13, 1999, court order granting grandparent access. On July 28, 2000, Sam
filed a motion to modify, seeking termination of grandparent access. He filed his motion
after the United States Supreme Court ruling in Troxel v. Granville, 530 U.S. 57, 73, 120
S.Ct. 2054, 147 L.Ed.2d 49 (2000), holding that a Washington statute granting third-party
visitation was overly broad in allowing "any person" to petition for visitation at "any time." 
The Court emphasized its ruling on the "sweeping breadth" of the Washington statute and
its application to the specific facts at hand.

 In his motion to modify, Sam contended the circumstances of the child or of one or
both of the joint managing conservators had so materially and substantially changed since
the rendition of the agreed order that it had become unworkable or inappropriate. Sam
also alleged the grandmother disobeyed the terms and conditions for possession of and
access to the child by permitting the natural mother to be in the child's presence. He
contended that such actions placed the child in serious and immediate danger. Finally,
Sam contended there is no basis in law for possession of, or access to, the child by the
grandmother because of the holding in Troxel.

 Sam contends the trial court erred in finding he waived any objection to the
constitutionality of Tex. Fam. Code Ann. § 153.433 (Vernon Supp. 2001). (1) At the time Sam
entered into the agreed order granting the grandmother access to the child, he did so
without raising any question as to the constitutionality of Section 153.433. The trial court
denied the motion to modify this agreement, finding that Sam waived any objection to the
constitutionality of the grandparent access statute by agreeing to the order. 

 It is generally recognized that one may waive the right to question the
constitutionality of statutes. Wall v. Parrot Silver & Copper Co., 244 U.S. 407, 37 S.Ct.
609, 61 L.Ed. 1229 (1917); Mallinckrodt Chem. Works v. Missouri ex rel. Jones, 238 U.S.
41, 35 S.Ct. 671, 59 L.Ed. 1192 (1915). A litigant's act or failure to act may waive a
constitutional right, even a challenge to the constitutionality of a statute. Young v. City of
Colorado, 174 S.W. 986 (Tex. Civ. App.-Fort Worth 1915, writ ref'd); see Phillips v.
Phillips, 532 S.W.2d 161, 163 (Tex. Civ. App.-Austin 1976, no writ). The general rule is
that the constitutional question must be raised at the earliest opportunity or it is waived. 
Mercer v. Phillips Natural Gas Co., 746 S.W.2d 933, 936 (Tex. App.-Austin 1988, writ
denied). Participation without objection in judicial civil proceedings otherwise
unconstitutional may operate as a waiver of the right to assert a constitutional challenge. 
Gulf Ref. Co. v. Bonin, 242 S.W. 776 (Tex. Civ. App.-Beaumont 1922, no writ).

 However, the general rule of waiver does not apply in this case. This is not a case
that fixed liability; this is a case over which the trial court retains continuing jurisdiction. 
The cases in which waiver has applied to prohibit the raising of a constitutional issue are
all cases on appeal where the party did not raise the issue at the trial court level. Phillips,
532 S.W.2d 161; Young, 174 S.W. 986. A party cannot seek to obtain benefits of an act
and attack its constitutionality. Wall, 244 U.S. at 411; see United States v. City & County
of San Francisco, 310 U.S. 16, 29, 60 S.Ct. 749, 84 L.Ed. 1050 (1940). In this case, Sam
is not attempting to obtain the benefits of the statute; rather, he is trying to avoid the
statute. This is a situation in which the trial court maintains continuing jurisdiction and has
the right to alter the order regarding visitation under the Family Code. See Tex. Fam. Code
Ann. § 156.301 (Vernon Supp. 2001). Under Section 156.301, the trial court may:

 [M]odify an order that sets the terms and conditions for possession of or
access to a child or that prescribes the relative rights and duties of
conservators if: 


 (1) the circumstances of the child or a person affected by
the order have materially and substantially changed since the date of
the rendition of the order; 


 (2) the order has become unworkable or inappropriate
under existing circumstances.


 Sam filed a motion to modify, claiming there is no basis in law for possession of, or
access to, the minor child by the grandmother pursuant to the United States Supreme
Court's ruling in Troxel. If Troxel truly does make Section 153.433 unconstitutional, then
maintaining an order granting grandparent access would be inappropriate because it would
violate Sam's Fourteenth Amendment rights under the United States Constitution. The
order granting grandparent visitation is subject to modification by the trial court. Tex. Fam.
Code Ann. § 156.301. Sam has no less a right to seek modification of the order because
a statute is found unconstitutional than because of a change of fact. If a statute that
authorized a term or condition of visitation is declared unconstitutional, that change should
operate like any other change in circumstances that potentially makes the order
unworkable or inappropriate. There is nothing in the statute that limits the change in
circumstances to factual changes rather than changes in law. 

 The trial court relied on the fact that Sam agreed to the order granting the
grandmother access to the child and is thereby barred from claiming that the statute
permitting such access is unconstitutional. However, we find Sam's agreement irrelevant
in determining whether he can seek modification of the order. The Family Code
encourages parties to seek amicable resolutions, especially with regard to children. The
purpose of Section 153.007 of the Family Code is to promote agreement among the parties
regarding conservatorship. (2) Agreements made pursuant to Section 153.007 are not
enforceable as contracts. Tex. Fam. Code Ann. § 153.007(c) (Vernon 1996). Though
parties may enter into a separate binding contract, that is not what happened in this case. 
Here, we have an agreed order granting grandparent access. Agreed orders may be
modified by the courts on a showing of changed circumstances. Hoffman v. Hoffman, 805
S.W.2d 848 (Tex. App.-Corpus Christi 1991, writ denied) (holding trial court had power to
modify support order and mother was not estopped to request increase in child support
where she seeks only to modify decree, not agreement); Leonard v. Lane, 821 S.W.2d
275, 277 (Tex. App.-Houston [1st Dist.] 1991, writ denied) (holding court has right to act
in best interest of child, notwithstanding any agreements of parties). In this case, we only
have an agreed court order granting the grandmother access. There is no contractual
agreement. Sam seeks to modify the court order and is entitled to do so. He has not
waived his objection to the constitutionality of Tex. Fam. Code Ann. § 153.433.

 Since the trial court did not include in the order from which Sam appeals a ruling
based on the Troxel decision, we will not consider the second point of error. (3)

 We reverse the judgment and remand the case to the trial court for further
proceedings.



 Donald R. Ross

 Justice


Date Submitted: October 24, 2001

Date Decided: November 15, 2001


Publish

1. Tex. Fam. Code Ann. § 153.433 (Vernon Supp. 2001) provides for possession of
and access to grandchildren.
2. § 153.007. Agreement Concerning Conservatorship


 (a) To promote the amicable settlement of disputes between the
parties to a suit, the parties may enter into a written agreement containing
provisions for conservatorship and possession of the child and for
modification of the agreement, including variations from the standard
possession order.


 (b) If the court finds that the agreement is in the child's best
interest, the court shall render an order in accordance with the agreement.


 (c) Terms of the agreement contained in the order or incorporated
by reference regarding conservatorship or support of or access to a child in
an order may be enforced by all remedies available for enforcement of a
judgment, including contempt, but are not enforceable as a contract.


 (d) If the court finds the agreement is not in the child's best
interest, the court may request the parties to submit a revised agreement or
the court may render an order for the conservatorship and possession of the
child.


Tex. Fam. Code Ann. § 153.007 (Vernon 1996).
3. Sam agreed at oral argument that we should not reach his second point of error.


enUsed="false" Name="Medium Grid 3 Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00028-CR

                                                ______________________________

 

 

                           GEORGE HENRY WILLIAMS, JR.,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                        On Appeal from the 2nd Judicial District Court

                                                          Cherokee
County, Texas

                                                            Trial
Court No. 17,188

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            George
Henry Williams, Jr.,[1]
and his wife, Peggy, frequently kept Peggys granddaughter, J.A., when J.A.s
mother had to be at work at 5:30 a.m.  In
February 2008, J.A. made an outcry allegation that, when her mother left her with
the Williamses on those occasions Williams 
sexually abused her.  Williams was
indicted and convicted for the offense of continuous sexual abuse of a
child.  See Tex. Penal Code Ann.
§ 21.02 (Vernon Supp. 2009).  This is a
relatively new statute, enacted during the 2007 legislative session.[2]  Williams was convicted by a Cherokee County[3]
jury and sentenced to thirty-five years incarceration.  After reviewing the record, the applicable
law, the briefs, and the oral arguments, we affirm the judgment of the trial
court, because (1) legally and factually sufficient evidence supports the jurys
verdict (points of error 1, 2, 3, and 4); (2) the trial court did not err in
denying Williams requested jury charge (point of error 7); and (3) Williams
failed to preserve any complaint that the statute is unconstitutional (points
5, 6, and 8).

 

            First,
we review a bit more of the background of this case.  The State alleged Williams engaged in an
ongoing sexually abusive relationship with his step-granddaughter, J.A.  At the time of trial, Williams had been
married to Peggy for about twenty-seven or twenty-eight years.  Peggy is the mother of Pamela King, who is
the mother of J.A.  During the months of September
2007 through January 2008 (the period alleged in the indictment), King regularly
worked the hours of 5:30 a.m. to 1:30 p.m. 
King delivered J.A. to the Williamses house about 5:10 a.m. each of the
mornings she was working.  After King had
gone on to work, J.A. would get in bed with the Williamses.  After a while, Peggy would get up to make
breakfast, leaving J.A. in bed alone with Williams.  It was then that the abuse reportedly
occurred.

            Eventually
J.A. told her cousin K.R. of the abuse, who then told her mother, LaTonya
Roberts,[4]
who then told King.  King asked J.A.
about the allegations, and J.A. told King what Williams had done to her.  When King asked J.A. how many times Williams
had engaged in the sexual abuse, J.A. said, just about every time [J.A.] went
out there to the Williamses home.  King
said that J.A. demonstrated to King what Williams had done.

            At
trial, J.A. testified that, when she was alone in the bed with Williams, He
put his finger in [her] middle and his private in [her] bottom, and he did
this [m]ore than twice.[5]
A video-recorded forensic interview with J.A. was played for the jury, in which
J.A. made similar accusations, saying Williams touched her inside her middle
and bottom with his finger more than once. 


(1)        Legally
and Factually Sufficient Evidence Supports the Jurys Verdict

            Points
of error 1 and 2 complain, respectively, of the legal and factual sufficiency
of the evidence to establish that the abuses alleged by the State took place
over a span of thirty or more days.  The
States indictment tracked the language of Section 21.02 of the Texas Penal
Code, alleging that Williams, during a period that was thirty (30) days or
more in duration, committed two or more acts of sexual abuse against J.A.  Cf.
Tex. Penal Code Ann. §
21.02(b)(1).  Williams claims there was
insufficient evidence to prove that any abuse, if it did occur, happened over a
span of thirty or more days.

            In
reviewing the legal sufficiency of the evidence, we view all of the evidence in
the light most favorable to the prosecution and determine whether, based on
that evidence and reasonable inferences therefrom, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt.
 Laster
v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Roberts v. State, 273 S.W.3d 322 (Tex. Crim. App. 2008).

            In
a factual sufficiency review, we review all the evidence, but do so in a
neutral light instead of the light most favorable to the verdict.  We determine whether the evidence supporting
the verdict is either too weak to support the fact-finders verdict, or,
considering conflicting evidence, is so outweighed by the great weight and
preponderance of the evidence that the jurys verdict is clearly wrong and
manifestly unjust.  Laster, 275 S.W.3d at 518; Lancon
v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim.
App. 2007).                 

            In
this analysis, we use a hypothetically correct jury charge to evaluate both the
legal and factual sufficiency of evidence.  Grotti
v. State, 273 S.W.3d 273 (Tex. Crim. App. 2008).  Such a charge accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the States
burden of proof or unnecessarily restrict the States theories of liability,
and adequately describes the particular offense for which the defendant was
tried.  Villarreal v. State,  286
S.W.3d 321(Tex. Crim. App. 2009); Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

            To convict Williams under this
statute, the State had to prove four elements:

 

      (1)        Williams
committed two or more acts of sexual abuse;

      (2)        over
a span of thirty days or more;

      (3)        against
J.A.; and

      (4)        that
at the time of the sexual abuse Williams was seventeen years of age or older
and J.A. was younger than fourteen years of age.

 

Sexual
abuse could have been proved by proving aggravated sexual assault of a child or
indecency with a child.  To prove
aggravated sexual assault of a child, the State had to present evidence that J.A.
was younger than seventeen years of age and that Williams penetrated J.A.s
sexual organ with his finger.  Tex. Penal Code Ann. § 22.021 (Vernon
Supp. 2009).  To prove indecency with a
child, the State would have had to present evidence Williams touched any part
of J.A.s genitals with Williams hand or finger, with the intent to arouse or
gratify Williams sexual desire.[6]  Tex.
Penal Code Ann. § 21.11(a) (Vernon Supp. 2009).

            The child victim, J.A., was seven
years old at trial; she testified that Williams put his finger in [her] middle
and his private in [her] bottom.  J.A.
described her middle and bottom as the private parts of her body from which
she urinated and defecated, respectively. 
She said that Williams did these acts more than twice.  In the forensic interview, J.A. said the
abuse happened more than once.  J.A. was
not, however, able to speak to the span of time over which these abuses
occurred.[7]  However, J.A.s mother, King, said she asked
J.A., How many times did he do that to you? 
J.A. replied (according to Kings testimony), Just about every time
that I went out there to stay with grandmother.  King testified that, as part of her normal
habit or routine, whenever she went to work early in the morning, J.A. went to
stay with the Williamses, and King regularly worked these early morning shifts
during the five-month period alleged in the indictment.  J.A. told the sexual assault nurse examiner
(SANE) who examined J.A. that the abuse occurred more than once.

             Based on this summarized testimony, a rational
trier of fact could have found that Williams committed two or more acts of
sexual abuse over a span of thirty or more days; the evidence is legally
sufficient to establish that element of the offense.  Likewise, we find the evidence factually
sufficient.  The evidence supporting the
jurys verdict is not so weak as to be clearly wrong or unjust.  As regards evidence contrary to the verdict,
Williams took the stand and denied J.A.s accusations.  He presented two of J.A.s teachers who said
that they had detected no disciplinary problems or mood swings in the child in
or after the period over which the alleged abuse occurred.  He points out that the SANE detected no
evidence of physical trauma when she examined J.A.; though she also pointed out
this was not in anyway unusual based on J.A.s allegations.  To the extent this evidence conflicts with
the jurys verdict, it cannot be said the verdict is against the great weight
and preponderance of the evidence proffered by Williams.  Accordingly, the first two points of error
are overruled. 

            In
his third and fourth points of error, Williams claims the evidence is legally
and factually insufficient to support a finding that, if he engaged in sexual
contact with J.A., he did it to arouse or gratify the sexual desire of any
person.  See Tex. Penal Code Ann.
§ 21.11(a)(1).  As pointed out earlier, Section
21.02 defines the offense of continuous sexual assault as committing any of the
enumerated penal code violations two or more times over thirty or more
days.  Two of the potential offenses
listed, and the two alleged by the State in the indictment, are the offenses of

Indecency
with a Child, by touching any part of the genitals of [J.A.] with the
defendants hand or finger, with the intent to arouse or gratify the defendants
sexual desire;[8] AND/OR Aggravated Sexual Assault of a Child,
namely, caused the penetration of the female sexual organ of [J.A.], with the
defendants finger.[9]

 

Thus, it was necessary for the
State to prove that Williams committed aggravated sexual assault two or more
times; indecency with a child by contact two or more times; or that Williams
committed at least one act of aggravated sexual assault and at least one act of
indecency with a child; that these acts were committed against J.A.; and the
acts were committed over a span of thirty or more days. 

            Obviously,
the indictment would be proved if the State proved Williams committed two or
more acts of aggravated sexual assault against J.A. over the statutory time span.  When J.A. described the abuse, she said that
Williams put his finger in [her] middle, by which she meant her vagina, or
where she went peepee; and his private in [her] bottom.  Leaving aside for the moment the second part
of that allegation (which was not alleged in the indictment), the first part
clearly claims Williams did what was alleged in the indictment as aggravated
sexual assault, that the defendant did cause the penetration of the female
sexual organ of [J.A.], with the defendants finger.  This evidence is sufficient to prove that
Williams committed aggravated sexual assault against J.A.  Cruz v.
State, 238 S.W.3d 389, 395 (Tex. App.Houston [1st Dist.] 2006, pet. refd)
(testimony of victim, standing alone, sufficient to support conviction for
sexual assault).  Bearing in mind our
analysis of Williams first two points of error, there was legally and
factually sufficient evidence to support a verdict that Williams committed
continuous sexual assault by committing two or more acts of aggravated sexual
assault.  Thus, any complaint that there
is insufficient evidence of intent to arouse or gratify the sexual desire of
any person, an element of indecency with a child, is moot.

            Nonetheless,
there was still sufficient evidence from which the jury could find intent to
arouse or gratify Williams sexual desire. 
The specific intent to arouse or gratify the sexual desire of a person
can be inferred from conduct, remarks, or all the surrounding circumstances. Couchman v. State, 3 S.W.3d 155, 163
(Tex. App.Fort Worth 1999, pet. refd). An oral expression of intent is not
required, and a defendants conduct alone is sufficient to infer intent.  Id.;
see also Abbott v. State, 196 S.W.3d
334, 341 (Tex. App.Waco 2006, pet. refd) ( jury could infer intent to arouse
or gratify sexual desire from defendants act of touching childs genitals).
Furthermore, intent can be inferred from the appellants conduct after the
incident. Couchman, 3 S.W.3d at
163.  Williams niece, Evette Hart,
called Williams when she heard about J.A.s allegations.  She said Williams did not deny the charges or
seem surprised:  he was just, just
really quiet . . . its like he didnt seem surprised.  He just seemed like he was caught.  

            We
have enunciated the standards for legal and factual sufficiency above.  We find evidence sufficient under both
standards; Williams third and fourth points of error are overruled.

(2)        The
Trial Court Did Not Err in Denying Williams Requested Jury Charge

            In
his seventh point of error Williams argues the trial court erred by not
granting Williams request for a special issue jury instruction.[10]  Williams argues that the trial courts charge
to the jury allowed the jury to return a nonunanimous verdict. This, reasons
Williams, amounted to a violation of his due process rights.

            The
Texas Code of Criminal Procedure requires unanimous verdicts in criminal cases.  Tex.
Code Crim. Proc. Ann. art. 36.29(a). 
Although it does not use the term unanimous, the Texas Constitution
likewise guarantees a defendants right to a unanimous verdict in criminal
cases.  Tex.
Const. art. V, § 13; Brown v.
State, 508 S.W.2d 91, 93 (Tex. Crim. App. 1974).  In his appellate brief, Williams claims Section
21.02 of the Texas Penal Code permits a verdict to be returned which is not the
unanimous decision of the jury.  Williams
is referring to the subsection of Section 21.02 which provides: 

     (d)     If a jury is the trier of fact, members of
the jury are not required to agree unanimously on which specific acts of sexual
abuse were committed by the defendant or the exact date when those acts were
committed.  The jury must agree
unanimously that the defendant, during a period that is 30 or more days in
duration, committed two or more acts of sexual abuse.

 

Tex.
Penal Code Ann. § 21.02(d).  Williams
further argues that, because the jury could have reached a nonunanimous
verdict, his due process rights were violated, though he does not explain how
this alleged lack of unanimity amounts to a due process violation.  See
Tex. R. App. P. 38.1(i)
(appellate brief must contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record). 

            The
thrust of Williams argument seems to be that, because Section 21.02 of the
Texas Penal Code states that a jury need not be unanimous in deciding which
abusive acts were perpetrated or when they occurred, such provision violated Article
36.29s requirement of unanimity.  However,
this is not the complaint Williams made to the trial court.  Williams asked the trial court to include the
following instruction in the charge to the jury:

We the jury unanimously find that the defendant,
G.W., during a period that is 30 or more days in duration, committed two or
more acts of sexual abuse.

                                    Yes
/ no

 

____________

Jury
Foreperson

 

The trial court
denied this request.  The submitted
charge, though, contained the following:

 

In order to find the defendant guilty of the
offense of Continuous Sexual Abuse of a Young Child, you are not required to
agree unanimously on which specific acts of sexual abuse were committed by the
defendant or the exact date when those acts were committed.  However, in order to find the defendant
guilty of the offense of continuous sexual abuse of a young child, you must agree unanimously that the defendant,
during a period that is 30 or more days
in duration beginning on or after September 1, 2007, through on or about
January 30, 2008, committed two or more
acts of sexual abuse.

 

(Emphasis added.)  Williams does not explain, and we cannot
discern, how the instruction he requested differs substantially from the
instruction given.  The charge given goes
on to accurately define acts of sexual abuse using the statutory definitions
in the Texas Penal Code for indecency with a child and aggravated sexual
assault.  See Tex. Penal Code Ann.
§§ 21.11, 22.021. Although he asked the trial court to use his instruction and
submit it as a special issue, the charge actually submitted requires the same
finding as the instruction Williams sought:  both instructions require a unanimous finding
that Williams perpetrated two or more acts of sexual abuse over thirty or more
days.  To the extent Williams wanted the
jury to be unanimous on which acts occurred on what dates, he did not ask the
trial court to submit such an instruction and thus has not preserved that
complaint for appellate review.  Tex. R. App. P. 33.1. 

            Williams
briefing on this point is unclear.  If he
is complaining the trial court did not submit the requested charge language
proffered by Williams, the charge given adequately tracked the statutory
language and was substantially the same as the one Williams requested.  To the extent he complains the jury was not
required to be unanimous on which abusive acts occurred and when, that
complaint was not preserved.  We overrule
the seventh point of error.

(3)        Williams
Failed to Preserve any Complaint that the Statute Is Unconstitutional

            In
his fifth, sixth, and eighth points of error, Williams claims Section 21.02 of
the Texas Penal Code is unconstitutional in three different ways:  on its face because it subjects a defendant to
a nonunanimous verdict (point of error 5); as applied to Williams because it
subjected him to a conviction by less than a unanimous verdict (point of error
6); and on its face because the statute subjects a defendant to conviction for
offenses which would otherwise be barred by the statute of limitations (point
of error 8). 

            Williams
made no objection to the trial court about the constitutionality of Section
21.02 of the Texas Penal Code.[11]  Failure to object that a statute is
unconstitutionally vague, as applied to a defendant, waives any appellate
review of that complaint.  Curry v. State, 910 S.W.2d 490, 496
(Tex. Crim. App. 1995) (holding appellant waived his challenge to statute as
vague as applied because he did not specifically object at trial); Fluellen v. State, 104 S.W.3d 152, 167 (Tex. App.Texarkana 2003, no pet.) (A
constitutionality challenge based on application to the defendants case cannot
be raised for the first time on appeal.). 
Similarly, the Texas Court of Criminal Appeals recently held that a
claim a statute is void on its face must also be preserved by trial objection.  Karenev
v. State, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009).  Williams has therefore not preserved for
review his fifth, sixth, or eighth points of error.[12]
 They are accordingly overruled. 




 

            We affirm the judgment and
conviction. 

 

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          January
13, 2010

Date Decided:             February
10, 2010

 

Publish

 

 











[1]George
Williams is referred to in this opinion as Williams.

 





[2]In
pertinent part, the statute criminalizes committing two or more acts of sexual
abuse against a child younger than fourteen years of age, where the actor is
seventeen or older, and the abusive acts take place over a span of thirty or
more days.  Acts of sexual abuse are
listed in the statute, and include sexual and aggravated sexual assault and
indecency with a child by contact, among other acts not relevant here.  The crime is a felony of the first degree,
with a range of punishment of not less than twenty-five years, not more than
ninety-nine years.  See Tex. Penal Code Ann.
§ 21.02.

 





[3]Originally appealed to the Twelfth Court of Appeals,
this case was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts.  See Tex.
Govt Code Ann. § 73.001 (Vernon 2005). 
We are unaware of any conflict between precedent of the Twelfth Court of
Appeals and that of this Court on any relevant issue.  See
Tex. R. App. P. 41.3.

 





[4]Roberts
is the sister of Peggy.  

 





[5]J.A.
testified to her body parts and adequately identified them; Williams does not
contest this on appeal.

 





[6]Obviously,
these are not the exclusive means of committing these offenses, but these are
the means alleged in the indictment.  See generally Tex. Penal Code Ann. § 21.11 (Vernon Supp. 2009), § 22.021.

 





[7]Arguably
this is precisely the kind of situation the Legislature considered when
enacting Section 21.02 of the Texas Penal Code. 
See Dixon v. State, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006)
(Cochran, J., concurring).





[8]See Tex.
Penal Code Ann. § 21.11(a)(1).

 





[9]See Tex.
Penal Code Ann. § 22.021.





[10]In
Williams brief, he urges three points of error in one section; points five and
six complain Section 21.02 of the Texas Penal Code is unconstitutional.  Point seven, as we have said, complains of
the denial of a jury instruction.  Almost
all of the briefing and argument in this section of Williams brief claims that
Section 21.02 allows a jury to return a verdict without being unanimous.  Thus, reasons Williams, he has been denied
his due process right to a unanimous verdict. 
See Tex. Const. art. V, §
13; Tex. Code Crim. Proc. Ann.
art. 36.29 (Vernon Supp. 2009). 
Williams arguments that Section 21.02 is unconstitutional have not been
preserved for our review.





[11]At
oral argument, Williams claimed the error was so severe as to warrant
review.  We are not persuaded by this
argument, in the face of clear rulings by the Texas Court of Criminal Appeals
and the lack of any argument or authority by Williams in support of this
assertion.

 





[12]We
are not without concern regarding this statute. 
We recognize that several states, for more than a decade, have had
similarly structured statutes outlawing the offense of continuous sexual
assault of a child, and the high courts of most of those states have found the
statutes to pass constitutional muster.  See State v. Ramsey, 124 P.3d 756, 76366 (Ariz. 2005); People v. Jones, 792 P.2d 643 (Cal. 1990); State v. Fortier, 780 A.2d 1243, 1252 (N.H.
2001); People v. Calloway, 672
N.Y.S.2d 638, 64243
(N.Y. Co. Ct. 1998); State v. Johnson,
627 N.W.2d 455, 46061
(Wis. 2001).  We are still left, though,
wondering, as we asked counsel at oral argument, what is this Court to review,
where, as here, arguably the jury did not have to agree exactly what abuses
occurred when?  We anticipate the State
would answer that this situation is analogous to Jefferson v. State, 189 S.W.3d 305 (Tex. Crim. App. 2006), where
multiple methods of committing the offense of injury to a child were alleged;
the court affirmed the conviction because, whether the injury was caused by an
act or an omission was not an element of the crimethe element was injury,
which could have been caused either by act or omission.  Jefferson,
189 S.W.3d at 31214.  Section 21.02 of the Texas Penal Code may
well fall within the reasoning of Jefferson,
Schad v. Arizona, 501 U.S. 624, 64345 (1991), and similar
cases.  Based on the failure to preserve
error, state of briefing and arguments presented, we do not reach these issues
in the instant case.  As of this writing,
we are aware of only one appellate decision, unpublished, addressing Section
21.02, and the issues of constitutionality or unanimity were not raised.  See
Enriquez v. State, No. 03-08-00760-CR, 2009 Tex. App. LEXIS 8185, at *12 (Tex. App.Austin Oct. 23,
2009, no pet. h.) (mem. op., not designated for publication).  Our sense is this statute, and the issues
herein touched upon, albeit briefly, have yet to be fully discussed by Texas
courts and appellants.